FILED

14 JUL 22 AM 9: 26

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

<u>M</u> DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

DANNY MONTANA GUERRA,
CDCR #C-23500,

                              Plaintiff,

        vs.

G.J. JANDA, et al.,

                              Defendants.

CASE NO. 12-CV-2313-BEN (WVG)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

[ECF Doc. No. 20]

        Danny Montana Guerra ("Plaintiff"), a prisoner currently incarcerated at Ironwood State Prison ("ISP"), is proceeding in pro se in this civil action, which he commenced with a Complaint first filed on September 18, 2012,[1] pursuant to 42 U.S.C. § 1983, while he was incarcerated at Calipatria State Prison ("CAL"). *See* Compl. (ECF Doc. No. 1).

## I.    Procedural History

        On January 1, 2013, the Court granted Plaintiff leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a), but sua sponte dismissed his Complaint pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). (ECF Doc. No. 4). Specifically,

---

[1] While Plaintiff's original Complaint was received by the Clerk on September 21, 2012, it is considered "filed" as of September 18, 2012, the date he alleges to have placed it in the institutional mail at Calipatria State Prison. *See* Compl. (ECF Doc. No. 1) at 93; *Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009) ("*Houston* [*v. Lack*, 487 U.S. 266, 270-72 (1988)] mailbox rule applies to § 1983 suits filed by *pro se* prisoners.").

the Court found Plaintiff's pleading failed to comply with Federal Rule of Civil Procedure 8, contained claims of alleged wrongdoing dating back to 2001 and 2005 which were barred by the statute of limitations, and failed to state a claim for either retaliation or conspiracy. *See id.* at 4-7. Plaintiff was provided a opportunity to amend, however, and after requesting and receiving two separate extensions of time in which to file a response, (ECF Doc. Nos. 6-9), he filed his First Amended Complaint ("FAC") on February 22, 2013 (ECF Doc. No. 11).

The Court then screened Plaintiff's FAC pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). *See* Aug. 20, 2013 Order (ECF Doc. No. 12). Plaintiff's allegations that he was denied a clerical job in 2003 at CAL in violation of due process were dismissed for failing to state a claim, and his claims of retaliation against Defendants Moschetti and Dominguez were found to be time-barred. *Id.* at 3-4, 5. As to Plaintiff's retaliation claims against Defendants Anaya, Builteman, Janda, Duran, Criman, Nava, Miller, McShan, and McNair, however, the Court could not determine whether the claims were time-barred, as it could not "discern from the face" of Plaintiff's FAC when he "had reason to know" his claims against them had accrued, or whether he would be "entitled to tolling." *Id.* at 5-6. Therefore, the Court concluded Plaintiff's retaliation claims against Anaya, Builteman, Janda, Duran, Criman, Nava, Miller, McShan and McNair were "sufficiently pleaded to survive the sua sponte screening required by 28 U.S.C. § 1915(e)(2) and § 1915A(b)" and directed the U.S. Marshal to effect service of Plaintiff's FAC on his behalf pursuant to 28 U.S.C. § 1915(d) and Federal Rule of Civil Procedure 4(c)(3). *Id.* at 7-8.

## II.   Plaintiff's Allegations

In his FAC, Plaintiff alleges to have appeared at his annual unit classification committee ("UCC") hearing on February 23, 2010, where he requested to be "placed on clerical work status." *See* FAC (ECF Doc. No. 11) at 6; Pl.'s Ex. D, "CDC 128-G UCC Annual Review," (ECF Doc. No. 11-3) at 9. Defendants Nava and Miller, both members of Plaintiff's February 23, 2010 UCC, denied Plaintiff's request, however,

1 | citing "pertinent information contained in [Plaintiff's] central file and based on . . . past
2 | disciplinary behavior" which "yielded his removal from his [previous] clerical
3 | assignment." Pl.'s Ex. D.

4 |      While Plaintiff's CDC 128-G dated February 23, 2010 does not further describe
5 | the disciplinary behavior relied upon to deny Plaintiff's request for a clerical work
6 | assignment, Plaintiff alleges Nava and Miller based their decision on "2003
7 | disciplinary charges of theft" which they "knew were dismissed" and a "confidential
8 | memorandum dated May 2003 [and] authored by Defendant G.J. Janda which ordered
9 | (in part), that [Plaintiff] should be removed from his clerical position due to being a
10 | litigation menace towards [CAL] staff and the State of California." FAC (ECF Doc.
11 | No. 11) at 6-7. Plaintiff alleges Miller "ordered Nava to keep [Plaintiff] assigned as
12 | a porter (janitor)[,] stating if we can't stop his legal activities, we can at least slow him
13 | down," so that "he won't have resources readily available." Id. at 7.

14 |      Sometime in June 2010, Plaintiff alleges Nava became aware of the CDC 602
15 | Inmate/Parolee appeal Plaintiff alleges to have filed challenging his February 23, 2010
16 | UCC hearing, which Plaintiff identifies as Log. No. CAL-D-10-00989. FAC (ECF
17 | Doc. No. 11) at 8. Plaintiff claims Nava contacted Appeals Coordinator Edwards and
18 | "instructed him to cancel [the] appeal." Id. In addition, Plaintiff claims Defendant
19 | Nava "took [him] to a second annual classification committee" hearing on June 4,
20 | 2010, during which Plaintiff again requested "clerical reinstatement" to committee
21 | members McNair and McShan. Id. at 8-9. Plaintiff claims Nava "attempted to change
22 | [the] reasoning," behind the February 23, 2010 UCC decision not to clear him for
23 | consideration of clerical duty, and produced on a document authored by Defendant
24 | Moschetti attesting to "disciplinary charges dismissed [in] 2003" and Defendant
25 | Janda's "2003 litigation menace memorandum." Id. at 8. Plaintiff alleges that when
26 | Captain McNair asked to "see the 2003 charges," Nava admitted they had been
27 | dismissed, but argued his request for clerical reinstatement should continue to be
28 | denied because they had been dismissed on a "technicality," and because Plaintiff

1    "like[d]" going to court "against staff." *Id.* at 8-9. Plaintiff then claims Nava, McNair,

2    and McShan "agreed to retaliated against [him]," and "authored a committee chrono"

3    again denying his request to be reinstated on clerical duty. *Id.* at 9. Plaintiff alleges

4    McNair told him "you'll never be a clerk as long as you're in prison" because he "beat

5    the 115 on an appeal technicality," and that Defendant McShan "nodded in agreement,"

6    stating, "You're done as a clerk." *Id.*

7         Plaintiff alleges to have filed an CDC 602 Inmate/Parolee appeal regarding

8    Miller and Nava's February 23, 2010 UCC decision, which he identifies in his FAC as

9    being designated Log. No. "CAL-D-10-00989." FAC (ECF Doc. No. 11) at 8.

10   Plaintiff also attaches an exhibit to his FAC which comprises two CDC 695 "Screening

11   Forms" referring to CDC 602 Inmate Appeal Log. No. CAL-D-10-00989. *See* FAC,

12   Pl.'s Ex. E, (ECF Doc. No. 11-3) at 11-12. Both these documents indicate CAL-D-10-

13   00989 was "screened out" at the second level of administrative review. *Id.* First, on

14   July 7, 2010, CAL-D-10-00989 was "returned" to Plaintiff as constituting "an abuse

15   of the appeal process" pursuant to California Code of Regulations § 3084.4, insofar at

16   it could not be "understood or [was] obscured by pointless verbiage or voluminous

17   unrelated documentation" in violation of California Code of Regulations § 3084(c).

18   Plaintiff was asked: "What exactly are you attempting to appeal?," directed to "address

19   the specific request," and reminded he was "only allowed one (1) issue per appeal."

20   *Id.* at 11. When Plaintiff apparently attempted to re-submit CAL-D-10-00989 on July

21   13, 2010, it was again "screened out" and "not accepted" on grounds that it

22   "duplicate[d] a previous appeal upon which a decision has been rendered or [was]

23   pending" pursuant to California Code of Regulations § 3084.3(c)(2). *Id.* at 12. This

24   time, Plaintiff was told: "Do not resubmit this appeal." *Id.* "Fearing appeal sanctions,"

25   Plaintiff alleges to have "complied with the order." FAC (ECF Doc. No. 11) at 8.

26   However, he does not identify, nor attach as exhibits to his FAC, which, if any, any of

27   his other previously decided or pending CDC 602 inmate appeals Log No. CAL-D-10-

28   00989 was determined to duplicate.

1   Plaintiff further claims that "during the appeals process" and "in approximately

2   September 2010," during an *Olson* review of his Central or "C-File,"[2] he "reviewed (for

3   the first time) an array of documents, which were never given to [him] prior to 2010,"

4   and which he claims were "purposely hidden" by staff, "misfiled," and made to look

5   like appeal exhibits.  FAC (ECF Doc. No. 11) at 10.

6   The documents specified by Plaintiff include the following:

7   1)  a document authored by Defendant Janda, and dated in May 2003, which

8   "orders prison staff Moschetti and Dominguez to remove . . . [Plaintiff] from his

9   clerical position due to [his] being a litigation menace," *id.* at 10-11;

10   2)  a document authored by Defendant Janda, dated June 2003, which "orders

11   [CAL] staff to conceal/misfile adverse action documents related to [Plaintiff's]

12   litigation activities to prevent further litigation by [him]." *id.* at 11;

13   3) a document authored by Defendants Anaya and Builteman, dated March 30,

14   2004, and denying him clerical status "based on [his] prior 2003 dismissed disciplinary

15   charges and . . . prior legal activities,"*id.* at 10;

16   4) a document authored by Defendants Janda, Duran, and Criman, dated January

17   31, 2006, and denying him clerical status based on his "prior 2003 dismissed

18   disciplinary charges and [his] prior legal activities against [California Department of

19   Corrections and Rehabilitation (CDCR)] staff," *id.* at 10, 12-13; and

20   5) a document authored by Defendant Duran, dated February 1, 2006, and

21   denying him clerical status based on his "2003 dismissed disciplinary charges of a

22   forged medical chrono." *Id.* at 10.

23   Plaintiff alleges Defendants Moschetti and Dominguez followed Janda's written

24   order, and in May or June 2003, "filed false disciplinary charges . . . designed to

25   terminate" and "remove" Plaintiff from his clerk position. *Id.* at 11 (citing CDC 115

26   Rules Violation Report "RVR" Log. No. 06-03-D022); *see also* Pl.'s Ex. B (ECF Doc.

27

28   [2] An *Olson* review is a review of a prisoner's central or medical files mandated by *In re Olson*, 37 Cal.App.3d 783, 112 Cal.Rptr. 579 (1st Dist. 1974).

12cv2313

1   No. 11-2). Plaintiff further alleges to have learned "by way of [the] hidden documents"
2   described above, that Defendants Anaya and Builteman also denied him clerical status
3   during a March 30, 2004 UCC hearing based on Janda's 2003 litigation menace memo
4   and Moschetti's already dismissed 2003 disciplinary charges. *Id.* at 13.

5       On an unspecified date in 2005, Plaintiff re-applied for a clerical position, but
6   was again denied "due to past disciplinary history." *Id.* (citing CDC 115 Log No. 06-
7   03-D022 and 06-03-D022R). Plaintiff appealed, requested an *Olson* review, and
8   requested that "false information/charges be removed" from his C-file. *Id.*; *see also*
9   Pl.'s Ex. C, "CDC 602 Inmate/Parolee Log. No. CAL-D-05-1662," dated August 29,
10  2005, (ECF Doc. No. 11-2) at 15. This appeal was granted at the first formal level of
11  review on October 28, 2005, when staff was ordered to remove "a memo dated August
12  12, 2005, authored by CCI L. Moschetti, which included information regarding a
13  dismissed CDC 115 for having unauthorized supplies in [his] cell, . . . caus[ing] the
14  loss of [his] clerk position," and to "generate a 128B documenting the dismissal of the
15  CDC 115." *See* Pl.'s Ex. C (ECF Doc. No. 11-3) at 1-2. Plaintiff claims to have been
16  "satisfied" with this response, and "believed the dismissed 2003 disciplinary charges"
17  and Moschetti's memorandum were "removed from his file as promised." FAC (ECF
18  Doc. No. 11-1) at 1.

19      He further asserts he was "unaware" of the continued existence and "secretive
20  usage" of the dismissed CDC 115 RVR Log. No. 06-03-D022 and Moschetti's
21  memorandum until Defendants Nava, Miller, McNair, McShan and Janda "used them
22  against [him] in 2010 and 2011 respectively." *Id.*

23      Plaintiff concludes that Defendants Dominguez and Moschetti violated his right
24  to due process and retaliated against him for exercising his First Amendment right to
25  file a civil action and grievances by filing the initial "false" disciplinary charges against
26  him in May or June 2003 which resulted in his being "terminated as a clerk," and which
27  were ultimately dismissed via Plaintiff's CDC 602 Inmate/Parolee Appeal Log No. 06-
28  03-D022R on January 27, 2004. *See* FAC (ECF Doc. No. 11-1) at 3-4; Pl.'s Ex. B

(ECF Doc. No. 11-2) at 5-13.[3] He further asserts that Defendants Nava, Miller, Janda, Duran, Criman, Anaya, Builteman, McNair, and McShan did the same by "maintaining" or continuing to rely on those "false" disciplinary charges in order to "block" his re-classification as a clerk during subsequent UCC hearings held in March 2004, January 2006, February 2010, and June 2010. *See* FAC (ECF Doc. No. 11) at 6-13, (ECF Doc. No. 11-1) at 4-5.

Plaintiff seeks declaratory relief and injunctive relief preventing CDCR and CAL personnel from retaliating against him, an order "reinstating [him] to his previous skill level I clerical status," placement on the "clerical worker hiring list," the "immediate expungement of the dismissed disciplinary charges, derogatory and false information, and any and all related documents making reference to . . . the dismissed disciplinary charges," and an order "allowing [him] physical inspection of [his] confidential, institutional, and [CDCR] records and archives to verify full compliance." *See* FAC (ECF Doc. No. 11-1) at 7-8. Plaintiff further seeks $100,000 in compensatory damages and $100,000 in punitive damages from each Defendant, as well costs, fees and "lost wages." *Id.* at 8-9.

## III. Defendants' Motion

On November 12, 2013, Defendants Anaya, Builteman, Janda, Criman, Miller, McShan, and McNair filed a Motion to Dismiss Plaintiff's FAC pursuant to Federal Rules of Civil Procedure 12(b) and 12(b)(6) (ECF Doc. No. 20). Defendants Duran and Nava later filed Notices of Joinder (ECF Doc. Nos. 31, 45). In their Motion, Defendants argue that Plaintiff's claims against Janda require dismissal because they were not properly exhausted prior to suit as required by 42 U.S.C. § 1997e(a). *See* Mot. (ECF Doc. No. 20-1) at 5, 8-9. Defendants further argue Plaintiff's retaliation claims against Nava and Miller related to his February 23, 2010 UCC hearing are barred by the statute of limitations, *id.* at 10-13, as are the claims of retaliation against

---

[3] Plaintiff's claims against Defendants Dominguez and Moschetti have already been dismissed pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). *See* Aug. 20,. 2013 Order (ECF Doc. No. 12) at 3-4, 5.

1   the remaining Defendants in counts two and three. *Id.* at 13. Finally, Defendants seek
2   dismissal of Plaintiff's requests for injunctive relief arguing that they have been
3   rendered moot by his transfer from CAL to ISP. *Id.* at 14-15.

**IV.   Notice of Defendants' Motion**

5          Because Defendants moved to dismiss based in part on Plaintiff's alleged failure
6   to exhaust, both Defendants and the Court provided him with the Notice then required
7   by the Ninth Circuit's decisions in *Wyatt v. Terhune*, 315 F.3d 1108, 1120 n.14 (9th
8   Cir. 2003) and *Woods v. Carey*, 684 F.3d 934, 938-40 (9th Cir. 2012). (ECF Doc. Nos.
9   20-2; 21). In *Wyatt*, the Ninth Circuit held that because "the failure to exhaust
10  nonjudicial remedies that are not jurisdictional should be treated as a matter in
11  abatement," the proper pretrial motion for raising the issue was an "unenumerated Rule
12  12(b) motion, rather than a motion for summary judgment." 315 F.3d at 1119. And
13  because such a motion permitted the court to "look beyond the pleadings and decide
14  disputed issues of fact," *id.* at 1119-20 (citing *Ritza v. Int'l Longshoreman's &
15  Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988) (per curiam)), a "procedure
16  closely analogous to summary judgment–then the court must assure that [the plaintiff]
17  has fair notice of his opportunity to develop a record." *Id.* at 1120 n.14. In *Woods*, the
18  Ninth Circuit held that the "fair notice of the requirements needed to defeat a
19  defendant's motion to dismiss for failure to exhaust administrative remedies," like the
20  notice required to apprise incarcerated pro se litigants of the requirements needed to
21  defeat summary judgment pursuant to *Klingele v. Eikenberry*, 849 F.2d 409, 411-12
22  (9th Cir. 1988), and *Rand v. Rowland*, 154 F.3d 952, 953 (9th Cir. 1998) (en banc),
23  must "be provided at the time of the defendant's motion[.]" *Woods*, 684 F.3d at 939.

24         In response to the Court's *Wyatt* Notice, Plaintiff filed a Motion for an Extension
25  of Time (ECF Doc. No. 36), which the Court granted (ECF Doc. No. 37). Plaintiff
26  ultimately filed his Opposition on February 14, 2014 (ECF Doc. No. 48). And on
27  February 25, 2014, Defendants filed their Reply (ECF Doc. No. 51). Although this
28  matter was originally referred to the Magistrate Judge, this Court has elected to resolve

1  the motion directly.

2  **V.      Intervening Case Law**

3          On April 3, 2014, before the Court could consider and rule on Defendants'

4  Motion, the Ninth Circuit decided *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en

5  banc).    *Albino* explicitly overrules *Wyatt*, *id.* at 1169, and "hold[s] that an

6  unenumerated motion under Rule 12(b) is *not* the appropriate procedural device for

7  pretrial determination of whether administrative remedies have been exhausted under

8  the PLRA [Prison Litigation Reform Act]." *Id.* at 1168 (italics added). Thus, unless

9  "a prisoner's failure to exhaust [is] clear from the face of the complaint," which is "rare

10 because a plaintiff is not required to say anything about exhaustion in his complaint,"

11 *id.* at 1169, a "motion for summary judgment, as opposed to an unenumerated Rule

12 12(b) motion, to decide exhaustion," is the appropriate procedure provided by the

13 Federal Rules. *Id.* at 1169, 1170. A Rule 56 motion is appropriate because "[i]n a

14 typical PLRA case, [the] defendant will have to present probative evidence [. . .] to

15 'plead and prove' . . . that the prisoner has failed to exhaust available administrative

16 remedies under § 1997e(a)." *Id.* at 1169 (quoting *Jones v. Bock*, 549 U.S. 199, 204

17 (2007)). Defendants must seek summary judgment on the basis of non-exhaustion,

18 therefore, because it "allow[s] resolution by the judge of disputed factual issues." *Id.*

19 at 1170.

20 **VI.     Unenumerated 12(b) & Exhaustion**

21         As noted above, Defendants move to dismiss Plaintiff's claims against

22 Defendant Janda pursuant to Rule 12(b) based on his alleged failure to properly

23 exhaust available administrative remedies prior to suit as is required by 42 U.S.C. §

24 1997e(a). Non-exhaustion is an affirmative defense which Defendants must "plead and

25 prove." *Jones*, 549 U.S. at 204; *Albino*, 747 F.3d at 1170. Therefore, in support of

26 dismissal, Defendants submitted the declarations of J. Zamora, the Acting Chief of the

27 CDCR Office of Appeals, and B. Paul, CAL's current Chief Deputy Warden, which

28 describe the CDCR's inmate appeals process and the levels of administrative review

1    existing at the times Plaintiff alleges his rights were violated. (ECF Doc. Nos. 20-3,

2    20-4). In support of their declarations, Zamora and Paul also attach a list of Plaintiff's

3    Appeal History as recorded by the CDCR's Inmate/Parolee Appeals Tracking System

4    dating back to 1995, *see* Zamora Decl. (ECF Doc. No. 20-3) Ex. A, at 8-10, Paul Decl.

5    (ECF Doc. No. 20-4) Ex. A at 9-13, as well as and photocopies of appeal documents

6    submitted by, and in response to, Plaintiff and his related allegations of retaliation by

7    CAL officials dating back to February 23, 2010. *See* Zamora Decl. ¶ 8(a)-(f); Paul

8    Decl. ¶ 6(a)-(h). Defendants ask the Court to consider the exhibits attached to Paul and

9    Zamora's Declarations, and "look beyond the pleadings and decide disputed issues of

10   fact" as to Plaintiff's purported failure to exhaust. *See* Mot. (ECF Doc. No. 20-1 at 4-5,

11   14-15) (quoting *Wyatt*, 315 F.3d at 1119-20).

12   While this procedure was authorized by the Ninth Circuit's decision in *Wyatt* at

13   the time Defendants' Motion was filed, the Ninth Circuit's subsequent en banc decision

14   in *Albino* explicitly prohibits this Court's consideration of "disputed questions of

15   material fact relevant to exhaustion" by way of Rule 12, and requires they be decided

16   by way of summary judgment instead. *Albino*, 747 F.3d at 1170-71. Accordingly, to

17   the extent Defendants move to dismiss Plaintiff's claims against Defendant Janda based

18   on Plaintiff's failure to exhaust, their Motion must be **DENIED**.

19   **VII.   Rule 12(b)(6)**

20   Defendants Nava and Miller further seek dismissal of Plaintiff's FAC pursuant

21   to Federal Rule of Civil Procedure 12(b)(6) on grounds that he fails to state a claim

22   upon which relief can be granted because his claims against them–specifically those

23   arising on or about February 23, 2010–are barred by the statute of limitations. *See* Mot.

24   (ECF Doc. No. 20-1) at 10-13. All remaining Defendants seek dismissal of Plaintiff's

25   earlier claims of retaliation against them pursuant to 12(b)(6) for the same reasons. *Id.*

26   at 13.

27   ///

28   ///

**A.     Standard of Review**

A Rule 12(b)(6) dismissal may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  In other words, the plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." *Id.* (citing FED. R .CIV. P. 8(a)(2) (alteration in original).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on motion to dismiss, a court is "not bound to accept as true a legal conclusion couched as a factual allegation") (cited approvingly in *Twombly*, 550 U.S. at 555). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted).

In analyzing a pleading, the Court sets conclusory factual allegations aside, accepts all non-conclusory factual allegations as true, and determines whether those non-conclusory factual allegations accepted as true state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 677–684; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (noting that the court need not accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences as true). And while "[t]he plausibility standard is not akin to a probability requirement," it does

1   "ask[] for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*,

2   556 U.S. at 678 (internal quotation marks and citation omitted).   In determining

3   plausibility, the Court is permitted "to draw on its judicial experience and common

4   sense." *Id.* at 679 (citation omitted).

5         Nevertheless, claims asserted by pro se petitioners, "however inartfully pleaded,"

6   are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines*

7   *v. Kerner*, 404 U.S. 519, 520 (1972).  Thus, courts "continue to construe pro se filings

8   liberally when evaluating them under *Iqbal*." *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7

9   (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)

10  (noting that courts "have an obligation where the petitioner is *pro se*, particularly in

11  civil rights cases, to construe the pleadings liberally and to afford the petitioner the

12  benefit of any doubt.")).

13        Finally, when resolving a motion to dismiss for failure to state a claim, the court

14  may not generally consider materials outside the pleadings, but it may consider exhibits

15  which are attached. *See* FED. R. CIV. P. 10(c) ("A copy of a written instrument that is

16  an exhibit to a pleading is a part of the pleading for all purposes."); *Schneider v. Cal.*

17  *Dep't of Corrs.*, 151 F.3d 1194, 1197 & n.1 (9th Cir. 1998).

18        **B.    Statute of Limitations**

19        "A claim may be dismissed [for failing to state a claim] on the ground that it is

20  barred by the applicable statute of limitations only when 'the running of the statute is

21  apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at*

22  *Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan*

23  *Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).  "'A complaint cannot be dismissed unless

24  it appears beyond doubt that the plaintiff can prove no set of facts that would establish

25  the timeliness of the claim.'" *Id.* (quoting *Supermail Cargo, Inc. v. United States*, 68

26  F.3d 1204, 1206 (9th Cir. 1995)); *see also Hughes v. Lott*, 350 F.3d 1157, 1163 (11th

27  Cir. 2003) (upholding *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2)(B) of

28  prisoner's time-barred complaint); *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l*

1   *Planning Agency*, 216 F.3d 764, 788 (9th Cir. 2000) (court may raise the defense of
2   statute of limitations *sua sponte*), *overruled on other grounds by Gonzalez v. Arizona*,
3   677 F.3d 383, 389 n.4 (9th Cir. 2012); *Cervantes v. City of San Diego*, 5 F.3d 1273,
4   1276-77 (9th Cir. 1993) (where the running of the statute of limitations is apparent on
5   the face of a complaint, dismissal for failure to state a claim is proper).

6       Because section 1983 contains no specific statute of limitation, federal courts
7   apply the forum state's statute of limitations for personal injury actions. *Jones v.*
8   *Blanas*, 393 F.3d 918, 927 (9th Cir. 2004); *Maldonado v. Harris*, 370 F.3d 945, 954
9   (9th Cir. 2004); *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999). Before 2003,
10   California's statute of limitations was one year. *Jones*, 393 F.3d at 927. Effective
11   January 1, 2003, the limitations period was extended to two years. *Id.* (citing CAL.
12   CIV. PROC. CODE § 335.1).

13       The law of the forum state also governs tolling. *Wallace v. Kato*, 549 U.S. 384,
14   394 (2007) (citing *Hardin v. Straub*, 490 U.S. 536, 538-39 (1989); ); *Jones*, 393 F.3d
15   at 927 (noting that in actions where the federal court borrows the state statute of
16   limitation, the federal court also borrows all applicable provisions for tolling the
17   limitations period found in state law, except to the extent any of these laws is
18   inconsistent with federal law).

19       Under California law, the statute of limitations for prisoners serving less than a
20   life sentence is tolled for two years. CAL. CIV. PROC. CODE § 352.1(a); *Johnson v.*
21   *California*, 207 F.3d 650, 654 (9th Cir. 2000), *overruled on other grounds*, 543 U.S.
22   499 (2005). Accordingly, the effective statute of limitations for most California
23   prisoners is three years for claims accruing before January 1, 2003 (one year limitations
24   period plus two years of statutory tolling), and four years for claims accruing thereafter
25   (two year limitations period plus two years of statutory tolling). *Garcia v. Lunes*, No.
26   CV 1-06-167, 2010 WL 1267128, at *2 (E.D. Cal. Mar. 30, 2010) (unpub.).

27       Unlike the length of the limitations period, however, "the accrual date of a
28   § 1983 cause of action is a question of federal law that is *not* resolved by reference to

1   state law." *Wallace*, 549 U.S. at 388.  "Under the traditional rule of accrual . . . the tort

2   cause of action accrues, and the statute of limitation begins to run, when the wrongful

3   act or omission results in damages." *Id.* at 391. (citation omitted).  Put another way,

4   "[u]nder federal law, a claim accrues when the plaintiff knows or has reason to know

5   of the injury which is the basis of the action." *Maldonado*, 370 F.3d at 955 (quoting

6   *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999)).

7        **C.    Timeliness of Plaintiff's Claims**

8        Defendants Miller and Nava seek dismissal of Plaintiff's claims of retaliation

9   related to his February 23, 2010 UCC hearing on the ground that they are barred by

10   California's two-year statute of limitations. *See* Mot. (ECF Doc. No. 20-1) at 10.  Nava

11   and Miller contend Plaintiff's claims against them accrued on February 23, 2010–the

12   date Plaintiff "kn[ew] or ha[d] reason to know" of the basis for his claims of injury due

13   to their alleged acts retaliation, *id.* (citing *Maldonado*, 370 F.3d at 955).  They argue

14   that he did not file his original complaint until September 2010, after the 2-year

15   limitations period expired. *Id.* at 12.  Nava and Miller further claim that because

16   Plaintiff "is serving a term of life without the possibility of parole–a straight life

17   term–which does not entitle him to release before the end of his natural life," he is not

18   entitled to the two extra years of statutory tolling permitted by California Code of Civil

19   Procedure § 352.1. *Id.* at 11-12 (citing Pl.'s FAC [ECF Doc. No. 11-3] at 9, Pl.'s Ex.

20   D).

21        Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) based on a

22   statute of limitations defense is only appropriate where the running of the statute of

23   limitations is apparent "on the face of a complaint." *Von Saher*, 592 F.3d at 969.

24   However, Rule 12(b)(6) also permits consideration of any matters of which judicial

25   notice may be taken, and any exhibits attached to the complaint. *United States v.*

26   *Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003).

27        Here, Defendants Nava and Miller point to Plaintiff's Exhibit D (ECF Doc. No.

28   11-3), the CDC 128-G form issued on February 23, 2010, documenting the actions

1   taken at Plaintiff's UCC Annual Review hearing, to show that Plaintiff is an "LWOP"
2   prisoner, sentenced to a life term without the possibility of parole, and therefore not
3   entitled to the additional two years of statutory tolling provided by California Code of
4   Civil Procedure § 352.1. *See* Mot. (ECF Doc. No. 20-1) at 11-12 (citing *Grasso v.*
5   *McDonough Power Equip., Inc*. 264 Cal. App. 2d 597, 599 (1968)). Without statutory
6   or equitable tolling, then, the limitations period for Plaintiff's claims of retaliation
7   against Nava and Miller would have expired on February 23, 2012–two years from the
8   date these claims accrued–and almost seven months before he initiated suit.

9        When a statute of limitations defense shows on the face of the complaint, the
10   burden of alleging facts which would give rise to tolling falls upon the plaintiff.
11   *Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993). Here, while Plaintiff does not
12   dispute he was sentenced to a life term without the possibility of parole (LWOP), he
13   cites *Martinez v. Gomez*, 137 F.3d 1124, 1126 (9th Cir. 1998) to argue he is
14   nevertheless "allowed tolling." See Pl.'s Opp'n (ECF Doc. No. 48-1) at 104-05.
15   *Martinez* however, concludes only that the plaintiff in that case was entitled to tolling
16   because he was serving "a life sentence *with* the possibility of parole," which
17   California courts had previously held was a "term less than for life" under California
18   Code of Civil Procedure § 352(a)(3), which was amended by California Code of Civil
19   Procedure § 352.1. See *Martinez*,137 F.3d at 1125-26 (italics added) (citations
20   omitted). Because Plaintiff was sentenced to a life term without the possibility of
21   parole, or a straight life term, however, section 352.1(a)'s plain language, which
22   permits two years of tolling for persons who "at the time the cause of action accrued,
23   [were] imprisoned on a criminal charge, or in execution under the sentence of a
24   criminal court for a term less than for life," simply does not apply to him. *See*, *e.g.*,
25   *Gonzalez v. Adams*, No. 1:09-cv-1284, 2013 WL 636730, at *6 (E.D. Cal. Feb. 20,
26   2013) (unpub.) (finding California prisoner sentenced to life without possibility of
27   parole was not entitled to tolling under § 352.1).

28        Plaintiff also argues in his Opposition that he is entitled to equitable tolling for

1    the period during which he spent exhausting these claims. *See Brown v. Valoff*, 422

2    F.3d 926, 943 (9th Cir. 2005) ("the applicable statute of limitations [in a § 1983 action]

3    must be tolled while a prisoner completes the mandatory exhaustion process [required

4    by 42 U.S.C. § 1997e(a)]."); Pl.'s Opp'n (ECF Doc. No. 48) at 2, (ECF Doc. No. 48-1)

5    at 98.

6        In support, Plaintiff attaches to his Opposition copies of his CDC 602

7    Inmate/Parolee Appeals' activity dating back to 2004, and specifically includes

8    duplicate copies of the two CDC Form 695s dated July 7, 2010 and July 13, 2010

9    "screening out" CDC 602 Log. No. CAL-D-00989, *id.*, Ex. F (ECF Doc. No. 48) at 40-

10    45, the inmate appeal he also alleges in his FAC to have filed regarding Nava and

11    Miller's actions. FAC (ECF Doc. No. 11) at 8 & Ex. E (ECF Doc. No. 11-3) at 11-12.

12    Thus, while the Court may not consider these documents in order to decide whether

13    Plaintiff has, in fact, "properly exhausted" his February 23, 2010 claim against Nava

14    and Miller, *see Albino*, 747 F.3d at 1170-71, it may consider them for purposes of

15    determining whether Plaintiff can show he is entitled to equitably toll the statute of

16    limitations while they were pending. *See Brown*, 422 F.3d at 943.

17

18        The Court finds that Plaintiff's allegations and exhibits regarding CDC 602 Log.

19    No. CAL-D-00989 demonstrate the statute of limitations as to his February 23, 2010

20    retaliation claims against Nava and Miller may be tolled from April 28, 2010, the date

21    he submitted the appeal, *see* Pl.'s Opp'n (ECF Doc. No. 48) at 40, to July 13, 2010, the

22    date it was "screened out" at the second level of administrative review and Plaintiff was

23    directed not to resubmit it. *Id.* at 43; *see also* Pl.'s FAC. at 8 & Ex. E. However, these

24    additional days are not sufficient to render Plaintiff's claims against Nava and Miller

25    timely since the Court agrees they accrued on February 23, 2010, during his UCC

26    hearing, when he appeared before the committee and "had reason to know" Nava and

27    Miller were denying him clerical status based on his prior litigation activities. *See*

28    *Wallace*, 549 U.S. at 391; *Maldonado*, 370 F.3d at 955.

1    Accordingly, the Court **GRANTS** Defendant Nava and Miller's Motion to
2    Dismiss Plaintiff's February 23, 2010 retaliation claims against them as barred by the
3    statute of limitations pursuant to Federal Rule of Civil Procedure 12(b)(6).

4    As to Plaintiff's retaliation claims against Defendants Nava, McNair, and
5    McShan arising during his "second annual" UCC hearing, the Court finds these claims
6    also accrued on the date of that hearing, June 4, 2010, because Plaintiff again appeared
7    before the committee on that day and had reason to know at that time he was still being
8    denied clerical work status based on his prior litigation activity. *See* FAC (ECF Doc.
9    No. 11) at 8-9; *Wallace*, 549 U.S. at 391; *Maldonado*, 370 F.3d at 955. Therefore, the
10   two-year statute of limitations on these claims expired on or about June 4, 2012, and
11   they too are untimely, unless adequately tolled by Plaintiff's administrative appeals.
12   *See Brown*, 422 F.3d at 943.

13   As to these claims, Plaintiff also provides copies of his inmate/parolee appeal
14   records, including CDC 602 Inmate/Parolee Appeal Log No. CAL-D-10-02078. *See*
15   Pl.'s Opp'n (ECF Doc. No. 48), Ex. D at 19-36. These documents show Plaintiff is
16   entitled to equitably toll California's two-year statute of limitations from September 30,
17   2010–the date his CDC 602 was submitted, *id.* at 22, until September 22, 2011–the date
18   his appeal was denied at the third or "Director's" level of review. *Id.* at 20. Thus, the
19   limitations period commenced on June 4, 2010, and ran through September 30, 2010,
20   a period of approximately four months, but was tolled for an additional twelve months
21   (until September 22, 2011), at which point the limitations period resumed, expiring
22   approximately twenty months later, sometime in May 2013. Because Plaintiff filed this
23   action in September 2012, these claims are timely.

24   Accordingly, the Court **DENIES** Defendant Nava, McNair and McShan's
25   Motion to Dismiss Plaintiff's June 4, 2010 retaliation claims against them on grounds
26   of untimeliness pursuant to Federal Rule of Civil Procedure 12(b)(6).

27   As to the remainder of Plaintiff's retaliation claims against Defendants Janda,
28   Anaya, Builteman, Criman, and Duran, all alleged to have also retaliated against

1   Plaintiff by denying him clerical status based on dismissed disciplinary charges and his
2   "prior legal activities," *see* FAC (ECF Doc. No. 11) at 10-13, at various times in 2003,
3   2004, and 2006, the Court finds the face of Plaintiff's own pleading shows they are
4   clearly barred by the statute of limitations. *Von Saher*, 592 F.3d at 969.

5        Plaintiff alleges he "reviewed for the first time" several documents allegedly
6   issued by Janda, Builteman, Criman, and Duran which had been "hidden from [his]
7   view" until he discovered them "during the appeals process and by *Olson* review in
8   approximately 2010." *See* FAC (ECF Doc. No. 11) at 10. Plaintiff claims these
9   documents show Janda, Anaya, Builteman, Criman, and Duran continued to rely on his
10  dismissed 2003 disciplinary record and prior litigation activities in order to refuse his
11  requests for clerical status in 2003, 2004, and 2006. *Id.* at 10-13. However, he also
12  admits knowing the basis for the denial of his clerical duty requests in August
13  2005–more than five years before he claims to have first discovered these documents
14  in 2010–when he claims to have once again "re-applied for a clerical position," was
15  again denied, and filed an administrative appeal on grounds that "false information was
16  in his central file" and specifically asked to have it removed. *Id.* at 13; *see also* Pl.'s
17  Ex. C, CDC 602 Inmate/Parolee Appeal Log. No. CAL D-05-1662 (ECF Doc. 11-2)
18  at 15, (ECF Doc. No. 11-3) at 1-7. Indeed, Plaintiff appears to have been aware in
19  2004, via another CDC 602 Inmate/Parolee Appeal Log No. CAL-04-00307, which he
20  attaches to his Opposition, that while his Rules Violation Report Log No. 06-03-D022
21  "was removed from [his] Central file," his classification chronos would remain in his
22  Central File because they "chronologically document[ed] classification actions." *See*
23  Pl.'s Opp'n (ECF Doc. No. 48) at 58. Plaintiff was further advised sometime in 2004
24  that "[t]he informational memorandum dated August 12, 2003 [would] also remain, as
25  it indicate[d] [Plaintiff's] abuse of his previous position as a clerk and misuse of state
26  property and time." *Id.* Further, in response to his 2005 grievance, Plaintiff was
27  informed that a 128B document would be added to his file "documenting the dismissal"
28  of the earlier charges, but did not indicate that information about the 2003 charges

1  would be removed. FAC (ECF Doc. No. 11-3) at 2. Thus, these documents show that
2  while Plaintiff was successful in having his C-file amended to remove any
3  "impl[ication of] guilt," *id.*, it is clear from the face of Plaintiff's FAC and the exhibits
4  he has attached, that he "kn[ew] or ha[d] reason to know" of the basis for his claims of
5  injury due to Janda, Builteman, Anaya, Criman and Duran's alleged acts retaliation at
6  least as early as 2005, if not before. *Maldonado*, 370 F.3d at 955. Plaintiff's claim to
7  have first discovered in 2010 the basis for the repeated refusals to grant him clerical
8  duty is not plausible given the contradictory allegations in his FAC and in the exhibits
9  he himself provides. Therefore, these claims are clearly time-barred.

10     Accordingly, the Court **GRANTS** Defendant Janda, Anaya, Builteman, Criman,
11  and Duran's Motion to Dismiss Plaintiff's 2003, 2004, and 2006 claims of retaliation
12  against them as untimely pursuant to Federal Rule of Civil Procedure 12(b)(6).

13  **VIII. Injunctive Relief**

14     Finally, Defendants seek dismissal of Plaintiff's claims for injunctive relief as
15  moot. *See* Mot. (ECF Doc. No. 20-1) at 14-15. As mootness pertains to a federal
16  court's subject matter jurisdiction under Article III, the issue is properly raised in a
17  motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). *White v. Lee*,
18  227 F.3d 1214, 1242 (9th Cir. 2000); FED. R. CIV. P. 12(b)(1). The party asserting
19  mootness bears the burden of establishing that there is no effective relief that the court
20  can provide. *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006) (citations
21  omitted). Rule 12(b)(1) attacks on jurisdiction can be either facial, confining the
22  inquiry to allegations in the complaint, or factual, permitting the court to look beyond
23  the complaint. *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*,
24  343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing *White*, 227 F.3d at 1242).

25     Plaintiff's Complaint seeks injunctive relief preventing CDCR and CAL
26  personnel from retaliating against him, an order "reinstating [him] to his previous skill
27  level I clerical status," placement on the "clerical worker hiring list," the "immediate
28  expungement of the dismissed disciplinary charges, derogatory and false information,

1   and any and all related documents making reference to . . . the dismissed disciplinary

2   charges," and an order "allowing [him] physical inspection of [his] confidential,

3   institutional, and [CDCR] records and archives to verify full compliance." *See* FAC

4   (ECF Doc. No. 11-1) at 7-8.

5         Defendants, who are all alleged to be correctional officials at CAL, contend that

6   because Plaintiff has been transferred from CAL to ISP since filing this action, they no

7   longer have the power to provide Plaintiff the relief that he requests. Mot. (ECF Doc.

8   No. 20-1) at 14. They point out that CDCR is not a party to this lawsuit, and that

9   Defendants have no control over either Plaintiff or his central file. *Id.* at 14-15.

10         Because Plaintiff has been transferred from CAL to ISP since filing this action,

11   the Court agrees his claims for injunctive relief against Defendants are moot. *See*

12   *Johnson v. Moore*, 948 F.3d 517, 519 (9th Cir. 1991) (per curiam) (claims for

13   injunctive relief relating to policies at correctional facility moot when prisoner was

14   transferred and prisoner did not demonstrate a reasonable expectation of returning to

15   the facility). Plaintiff has not demonstrated that an exception to the mootness doctrine

16   applies. Further, although Plaintiff argues that he was promised relief, he does not

17   dispute Defendants' contention that they do not have the power to give him the

18   requested relief. Neither CDCR nor ISP officials are parties to this lawsuit. Any

19   injunctive relief granted by this Court would therefore have no effect. Accordingly,

20   the Motion to Dismiss the claims for injunctive relief is **GRANTED**.

21   **IX.**   **Conclusion and Order**

22         Based on the foregoing, the Court **ORDERS** as follows:

23         1)    Defendants' Motion to Dismiss Plaintiff's claims against Defendant Janda

24   for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a) and

25   Federal Rule of Civil Procedure 12(b) is **DENIED**;

26         2)    Defendants' Motion to Dismiss Plaintiff's retaliation claims against

27   Defendants Nava and Miller arising on or about February 23, 2010 as barred by the

28   statute of limitations pursuant to Federal Rule of Civil Procedure 12(b)(6) is

1   **GRANTED**;

2       3)    Defendants' Motion to Dismiss Plaintiff's retaliation claims against

3   Defendants Nava, McShan, and McNair arising on or about June 4, 2010 as barred by

4   the statute of limitations pursuant to  Federal Rule of Civil Procedure 12(b)(6) is

5   **DENIED**;

6       4)    Defendants' Motion to Dismiss Plaintiff's retaliation claims against

7   Defendants Janda, Anaya, Builteman, Criman, and Duran arising in 2003, 2004, and

8   2006 as barred by the statute of limitations pursuant to Federal Rule of Civil Procedure

9   12(b)(6) is **GRANTED**; and

10       5)    Defendants' Motion to Dismiss Plaintiff's claims for injunctive relief is

11   **GRANTED**.

12       **IT IS FURTHER ORDERED** that because Plaintiff has already been provided

13   an opportunity to amend his pleading in order to allege facts which might render his

14   claims timely, further leave to amend those claims is **DENIED** as futile. *See Somers*

15   *v. Apple, Inc.*, 729 F.3d 953, 960 (9th Cir. 2013) ("dismissal without leave to amend

16   is proper if it is clear that the complaint could not be saved by amendment.") (citation

17   omitted).

18       Accordingly, the Clerk is **DIRECTED** to terminate this action as to Defendants

19   Janda, Anaya, Builteman, Criman, Duran, and Miller based on Plaintiff's failure to

20   state a timely claim for relief against them pursuant to  Federal Rule of Civil Procedure

21   12(b)(6).

22       The remaining Defendants, Nava, McShan, and McNair, are hereby **ORDERED**

23   to file a responsive pleading to Plaintiff's First Amended Complaint within 14 days of

24   this Order pursuant to Federal Rule of Civil Procedure 12(a)(4)(A).

25       **IT IS SO ORDERED.**

26

27   Dated: July 2/ , 2014

28                                    HON. ROGER T. BENITEZ
                                  United States District Judge

12cv2313